Ryan Linder, Esq.
Childress & Jackson, LLC
280 South Harrison Street, Suite 200
East Orange, NJ 07018
(973)678-5038
Attorneys for Plaintiff



## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RHONDA GARRETT | Civil Action No.: _05 — 1164_ |
| Plaintiff, | Hon. _JLL_ |
| v. | |
| THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, JIM NICHOLSON, SECRETARY OF THE UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, PATRICK TROY | **Complaint and Jury Trial Demand** |
| Defendants. | |

Plaintiff, Rhonda Garret, for her complaint against defendants: The United States Department of Veterans Affairs, Jim Nicholson - Secretary of the United States Department of Veterans Affairs and Patrick Troy states as follows:

### JURISDICTION AND VENUE

1.   Plaintiff, Rhonda Garrett, is an African American female residing at 3 Martin Drive, Somerset, New Jersey.  During the relevant time period, she was employed as a Head Nurse  by the Department of Veterans Affairs at its East Orange, New Jersey and Lyons, New Jersey campuses.

2.   Defendant, the Department of Veterans Affairs, is an independent establishment within the executive branch of the United States government.  During the relevant time period it maintained operations at various locations in New Jersey, including Lyons, New Jersey and East Orange, New Jersey.

3.   Defendant, Jim Nicholson is Secretary of the United States Department of Veterans Affairs.

4.  Defendant, Patrick Troy, a non-African American male, is an employee of the United States Department of Veterans Affairs.  His title is Associate Director of Patient Care Services.  He is Ms. Garrett's supervisor.

5.  This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq., the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, et. seq., 5 U.S.C. § 2302, the Federal Whistelblower Protection Act, 5 U.S.C. § 2302, et. seq., U.S.C. Const. Amend. 1 and 42 U.S.C. § 1983.

6.  This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  28 U.S.C. § 1332(a) also confers jurisdiction upon this court because the amount in controversy exceeds $75,000 and the litigants are citizens of different states.

7.  Venue is proper in this court pursuant to 28 U.S.C. § 1391 (a) and ( c ).

## FACTUAL BACKGROUND

8.  Rhonda Garrett is an African-American Female who is a  Lieutenant Colonel in the United States Army Reserve.  She holds a number of degrees and certifications.  To wit: she received a Bachelor of Science in Nursing in 1975, she received a Masters in Psychiatry and Administration in 1985, she is also holds certifications from the American Nurse Association in Gerontology and Administration.

9.  Despite Rhonda Garrett's qualifications and service to her country, she has been repeatedly discriminated against because of her race and disability, been continually exposed to a hostile work environment and retaliated against for engaging in protected activity.

10.  In February of 1997 Rhonda Garrett was assigned as the Head Nurse of Four Units on the Lyons Campus: 53CE, 53CW, The Rap Lounge and The Women's Center.  As a new head nurse at the facility, she asked her  supervisor, M.S. Carter, why she was being assigned so many units.  Ms. Carter replied that Patirck Troy "wanted it that way" and if she did not like it she would be demoted to a staff nurse position.

11.  In June of 1997, Rhonda Garrett, who was a Minority Veterans Coordinator, was scheduled to attend a conference for all coordinators in Virginia.  Despite the fact Rhonda Garrett's immediate supervisor authorized her attendance, Patrick Troy barred her from attending the conference.

12.  In September of 1997, Rhonda Garrett, who was also an EEO investigator, was assigned to conduct an investigation.  Not only did Mr. Troy prevent her from conducting the investigation, he removed her as an EEO investigator.

13.  In April of 1998 Rhonda Garret was reassigned as Head Nurse of two of the most difficult units in the Lyons facility - both were in Psychiatry.  Her former unit, the Rap

Lounge, was assigned to a white employee - Irene Miller. When she inquired about the transfer, she was again told that Patrick Troy wanted it that way and if she did not like it, she would be demoted.

14.    Rhonda Garrett was published in the Veterans Administration Journal. While white nurses regularly received pecuniary awards for being published, Rhonda Garrett received nothing.

15.    In December of 1998, Rhonda Garrett's assistant head nurse was reassigned to another area. Despite being charged with managing the two most difficult units at the Lyons Campus, her requests for an assistant were repeatedly ignored. White nurses, may of whom only had one unit to manage, had assistant head nurses. In June of 1999, Rhonda Garrett was finally assigned an assistant head nurse; however, her assistant was reassigned in March of 2000. Frustrated with low staffing levels, Rhonda Garrett threatened to notify the inspector general about the problem in June of 2000. She also shared her concerns with investigators who came to the facility from the VA in Northport. Notwithstanding repeated requests for an assistant head nurse, Rhonda Garrett was not assigned a head nurse for the remainder of her duration at the Lyons Campus - she departed in May of 2001. In fact, when she broached the topic with Patrick Troy in June of 2000, he told her she was negative and told her to look for something else to do. During that period Nancy Stetson - a white head nurse - requested and was provided an assistant head nurse.

16.    Patrick Troy also established a pattern of mounting unwarranted disciplinary actions against Rhonda Garrett. For instance, in July of 1999 Rhonda Garrett received two written counselings for failing to provide a medical certification when she used three days of sick leave during her annual leave. When Rhonda Garrett asked that the written counseling be rescinded, her request was met with laughter. These counseling were contrary to VA Policy. This is evidenced by the fact that the counselings were ultimately found to be unjustified. The stress of running short staffed units when coupled with the unjustified disciplinary action aggravated Rhonda Garrett's mitral valve prolapse. As a result she experienced chest palpitations, shortness of breath and severe anxiety. Her condition forced her to take off of work from October 19, 1999 through the middle of December 1999. She ultimately filed a Workers Compensation claim for a job related injury.

17.    In May of 2000 Rhonda Garret received a written counseling for failing to provide her supervisor with all of her roster sheets. In Rhonda Garretts defense, a nurse on her unit indicated that she had given all of the rosters to one of Rhonda Garrett's supervisors - Ms. Outsey - who then went to copy them. When Ms. Outsey returned, several of the roster sheets were missing. Despite this discrepancy, Rhonda Garrett was still disciplined. The written counseling prompted Rhonda Garrett to file an EEO Complaint.

18.    On March 20, 2002 Amy Lacavella, from the Office of performance Management Improvement reported to Rhonda Garrett's unit and stated that she was there to interview

a patient pursuant to an investigation. Amy Lacavella, a non-African American female, informed Rhonda Garrett that taping a patient was permissible so long as the patient gave permission. Amy Lacavella received the patients permission and conducted the interview. Taping a patient with his consent did not constitute a violation of VA policy. Even though Rhonda Garrett did not conduct the interview nor was she responsible for supervising Amy Lacavella, Patrick Troy recommenced that Rhonda Garrett be suspended. Of course Mr. Troy's zealous enforcement of non-existent rules did not extend to Ms. Lacavella; she only received a verbal counseling.

19.     In April of 2002 Monette Fields, a national field representative of the American Legion, visited one of Rhonda Garrett's units at the East Orange facility. She was accompanied by Crystal Grace, an employee of the East Orange Facility. While an earlier e-mail advised Rhonda Garrett that the American Legion Representative would visit her unit at 2:00 p.m., the representative and Ms. Grace arrived at 10:30 a.m. When they arrived Rhonda Garrett was on the phone with a supervisor - Dolores Fernandez. The two were greeted by Rhonda Garrett's secretary - Mattie Nunez. Ms. Nunez proceeded to inform Ms. Garrett that Cyrstal Grace was from voluntary services, a unit in the East Orange facility, and she was there to conduct a tour of the facility. Since Rhonda Garrett was in the process of preparing her units for the planned American Legion Visit later that afternoon, she informed Ms. Grace that she could not conduct a tour at the moment and recommended that they come back at a later point in time. Based on this exchange, Ms. Grace filed a report - which was littered with contradictions - alleging Ms. Garrett was rude. The American Legion visitor and Ms. Nunez disputed Ms. Grace's allegations that Rhonda Garrett was rude. Despite the contradictions and dearth of evidence against Ms. Garrett, Patrick Troy recommended that she be suspended.

20.     The discipline meted out to black employees at the East Orange and Lyons campuses exceeded the discipline meted out to similarly situated non-black employees. For instance, Lawrence Graebner, a white male registered nurse, took a group of patients outside to smoke. In the process, he lost track of one a patient who escaped from the facility. On another occasion, one of Mr. Graebner's patients escaped out of a window of the facility and never returned. Mr. Graebner also assaulted a patient on another occasions. For these various transgressions, Mr. Graebner received a 14 day suspension. Conversely, Aaron Johnson, an African American nurse was suspended for 45 days when one of his patients escaped.

21.     Equally important are the number of African Employees who were terminated at the facility during the relevant time period. Of the 46 employees who were terminated, 42 - 92% - were African American.

22.     Before Patrick Troy's arrival in 1996 there were three African American Head nurses on the Lyons Campus. Seeking to create a segregated campus, the defendants removed the African American Head nurses from the Lyons campus and forced them to go to the East Orange Campus. When units headed by African American head nurses closed, Patrick Troy refused to reassign them to other units on the Lyons Campus. Instead, they were

shipped to the East Orange Campus. Conversely, when units headed by non-African American head nurses closed, they were reassigned to other units on the Lyons Campus. On May 17, 2001 Rhonda Garrett's - the final African American Head Nurse on the Lyons Campus - unit was closed and she was sent to the East Orange Campus. After Rhonda Garrett's transfer, additional unit closures were planned for the Lyons campus. When discussing those closures Patrick Troy went so far as to tell the nurses that he could no longer protect them.

23. Before Patrick Troy's arrival, Rhonda Garrett had consistently been rated outstanding on her employment evaluations. Begining in 1999, Rhonda Garrett began receiving only satisfactory ratings. Ms. Garrett believes these ratings were based on here race, disability, discrimination complaints she filed and threats to go to the inspector general.

24. Rhonda Garrett was also subject to a hostile work environment. In August 2001 Rhonda Garrett sought to use annual leave time. Even though she had not used the full amount of annual leave allotted to her, Patrick Troy denied her request.

25. From July through September of 2002 a non-African American employee accessed Rhonda Garrett's personal medical records and began discussing her personal medical information with other employees. At the time management had an alert system in place to notify them of such intrusions. Management failed to take any steps to follow up on the alerts. The matter was brought to Rhonda Garrett's attention when another employee approached her and alerted her to the fact that her medical information was being widely disseminated by this employee. Rhonda Garrett immediately notified management. Management failed to promptly investigate the matter. When the investigation was completed, the guilty employee received a mere three day suspension.

26. In a thinly veiled attempt to tell Rhonda Garrett that he wanted her to leave the East Orange facility, Patirck Troy sent Ms. Garrett an e-mail advertising a position at a VA facility in Pittsburgh. Rhonda Garrett informed Patrick Troy that she was not interested in an out of state position and asked him not to send her any such e-mails. Ignoring Rhonda Garrett's request, Patrick Troy sent her an e-mail for a position in Delaware. The e-mail, which was dated July 2, 2004, pertained to a position that was already closed.

27. On October 25, 2002, Rhonda Garrett was denied a promotion to Director of Clinical Services. She believes the denial was based on her race, disability, prior complaints of discrimination and threats to go to the inspector general. A non-African American was hired for the position.

## COUNT ONE

### (Racial Discrimination)

28. Plaintiff repeats the allegations contained in paragraphs 1-27 of the complaint.

29.   Defendants discriminated against the plaintiff and other African Americans because of their race.

30.   The plaintiff applied for a position as Director of Clinical Services. She was qualified for the position. She applied for the position. She was not selected for the position. A member of a non-protected class was awarded the position.

31.   Defendants discriminated against the plaintiff by lowering her previous employment evaluations of outstanding to merely satisfactory. Defendants discriminated against other African Americans by generally giving them lower employment evaluations than non-African Americans.

32.   Defendants discriminated against plaintiff and other African Americans by creating a segregated work place at the Lyons Campus. This was achieved by closing units that were headed by African American Head nurses at the Lyons Campus and forcing them to go to the East Orange Campus.

33.   Defendants discriminated against the plaintiff and other African Americans by disciplining them more harshly than similarly situated non-African American Employees. The defendants discriminated against the plaintiff by taking disciplinary actions that were wholly unwarranted and inappropriate.

34.   As a direct and proximate result of the defendants' discriminatory conduct, the plaintiff has suffered and will continue to suffer injuries.

      **WHEREFORE,** Plaintiff demands judgment as follows:
      - general and compensatory damages including pre-judgment interest;
      - emotional distress damages;
      - punitive damages;
      - attorneys fees and costs; and
      - such further relief as the court deems just and equitable.

## COUNT TWO

### (Hostile Work Environment)

35.   Plaintiff repeats the allegations contained in paragraphs 1-34 of the complaint.

36.   Defendants forced the plaintiff to work in a hostile work environment.

37.   Defendants subjected plaintiff to a hostile work environment by failing to provide her with adequate staffing levels and an assistant head nurse, despite the fact she was responsible for more units than any other head nurse.

38.   Defendants subjected plaintiff to hostile work environment by lowering her prior

employment evaluations from outstanding to merely satisfactory.

39.    Defendants subjected plaintiff to a hostile work environment by subjecting her to
       disparate system of discipline that was irrational, unwarranted and targeted African-
       Americans more harshly than non-African Americans.

40.    Defendants subjected plaintiff to hostile work environment by telling the plaintiff that she
       should do something else.

41.    Defendants subjected plaintiff to a hostile work environment by telling her she was
       negative.

42.    Defendants subjected plaintiff to a hostile work environment by intimating that she
       should leave by sending her announcements for out of state job vacancies.

43.    Defendants subjected the plaintiff to a hostile work environment by allowing another
       employee to repeatedly access her personal medical records and disseminate them
       amongst other employees of the facility.  The environment was further soured by the fact
       that the offending employee received a mere slap on the wrist for her transgressions.

44.    Defendants subjected plaintiff to a hostile work environment by denying her request for
       annual leave when she had not used up the annual leave that was allotted to her.

45.    As a direct and proximate result of the defendants' conduct, the plaintiff has suffered and
       will continue to suffer injuries.

       **WHEREFORE**, Plaintiff demands judgment as follows:
       •     general and compensatory damages including pre-judgment interest;
       •     emotional distress damages;
       •     punitive damages;
       •     attorneys fees and costs; and
       •     such further relief as the court deems just and equitable

## COUNT THREE

## (RETALIATION)

45.    Plaintiff repeats the allegations contained in paragraphs 1-45 of the complaint.

46.    The plaintiff complained about discrimination that was rampant at the East Orange and
       Lyons facilities.

47.    The plaintiff threatened to complain to the Inspector General about inadequate staffing
       levels in her unit.

59.   Defendants also discriminated against the plaintiff because of her disability.

60.   As a direct and proximate result of the defendants' conduct, the plaintiff has suffered and will continue to suffer injuries.

      **WHEREFORE**, Plaintiff demands judgment as follows:
      *   general and compensatory damages including pre-judgment interest;
      *   emotional distress damages;
      *   punitive damages;
      *   attorneys fees and costs; and
      *   such further relief as the court deems just and equitable

## COUNT FIVE

### (Violation of Civil Rights)

61.   Plaintiff repeats the allegations contained in paragraphs 1-60 of the complaint.

62.   Insofar as the defendants retaliatory conduct was motivated by protected speech and protected activity, their conduct constitutes a violation of 42 U.S.C. § 1983.

      **WHEREFORE**, Plaintiff demands judgment as follows:
      *   general and compensatory damages including pre-judgment interest;
      *   emotional distress damages;
      *   punitive damages;
      *   attorneys fees and costs; and
      *   such further relief as the court deems just and equitable

## EXHAUSTION OR REMEDIES

      Plaintiff filed Complaints of discrimination against defendants, pursuant to Title 29 of the Code of Federal Regulations. These complaints had the following case numbers: 200h-1818, 200h-2514, 200h0561-2002100648, 200h-0561-2002104092, 170-a2-8323x, 200h=0561-2003100609, 170-2004-00282x. These decisions were received by plaintiff's counsel on November 30, 2004 and February 10, 2005.

                                        Childress & Jackson, LLC
                                        Attorneys for Plaintiff

                                        By: _____
Dated: February 25, 2005                     Ryan Linder

## JURY DEMAND

Plaintiff demands a jury trial as to all issues.

Childress & Jackson, LLC
Attorneys for Plaintiff

By: _____
　　　Ryan Linder

Dated: February 25, 2005

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other court, arbitration or administrative proceeding.

Childress & Jackson, LLC
Attorneys for Plaintiff

By: _____
　　　Ryan Linder

Dated: February 25, 2005