NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RHONDA GARRETT, ) | |
| ) | Civil Action No.: 05-cv-1164 (JLL) |
| Plaintiff, ) | |
| v. ) | |
| ) | **OPINION** |
| THE UNITED STATES ) | |
| DEPARTMENT OF VETERANS ) | |
| AFFAIRS, JIM NICHOLSON, ) | |
| SECRETARY OF THE UNITED ) | |
| STATES DEPARTMENT OF ) | |
| VETERANS AFFAIRS, ) | |
| PATRICK TROY, ) | |
| HOSPITAL, ) | |
| ) | |
| Defendants. ) | |

**LINARES**, District Judge.

　　Plaintiff Rhonda Garrett brings this action against her employer, the United States Department of Veterans Affairs, alleging, inter alia, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and discrimination in violation if the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. ("Rehabilitation Act").  Presently, Defendants United States Department of Veterans Affairs ("VA"), Jim Nicholson, Secretary of the United States Department of Veterans Affairs ("Secretary Nicholson"), and Patrick Troy (collectively, "Defendants"), move to dismiss various portions of the Complaint pursuant Fed. R. Civ. P. 12(b)(6) and 56(c).  This motion is resolved without oral argument.  Fed. R. Civ. P. 78.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case have already been laid out extensively by the parties, and as such need not be reiterated in full for purposes of the present motion. The relevant facts will be incorporated when appropriate into the legal discussion. Plaintiff is an African-American female who was employed as a head nurse by the VA during the relevant time period. Plaintiff alleges that beginning in 1996, she and other African-American nurses were subjected to retaliation and disparate treatment. Plaintiff also asserts a disability of mitral valve prolapse, which she maintains, is brought on by anxiety and which caused shortness of breath and heart palpitations.

In or around February 1997, Plaintiff was assigned as the head nurse for four units in the VA's Lyons, New Jersey campus. In essence, Plaintiff alleges a variety of discriminatory events, beginning in June 1997 and extending through April 2002, citing repeated discrimination because of her race and purported disability, which, she claims, exposed her to a hostile work environment. Plaintiff maintains that Defendant Patrick Troy ("Troy"), the Associate Director of Patient Care Services and one of Plaintiff's supervisors, was frequently involved in many of the alleged discriminatory incidents. Examples of alleged discriminatory acts include the following:

- In February 1997, Plaintiff was assigned to four units on the Lyons campus and, and Troy allegedly told her that "if she did not like it she would be demoted to a staff nurse position." (Compl. ¶ 10).
- In June 1997, despite authorization from her immediate supervisor, Troy allegedly barred Plaintiff from attending a conference for all minority Veterans Coordinators. (Id. ¶ 11).
- In September 1997, Troy allegedly prevented Plaintiff from conducting an EEO

investigation and removed her as an EEO investigator.  (Id. ¶ 12)

- In April 1998, Plaintiff was allegedly reassigned to two "of the most difficult" psychiatric units at the Lyons campus, while her previous unit was reassigned to a white employee.  (Id. ¶ 13).

- In December 1998, Plaintiff's assistant head nurse was reassigned and the position remained unfilled, while white head nurses allegedly had assistant head nurses assigned to them.  (Id. ¶ 15).

- Plaintiff also contends that Troy established a pattern of unwarranted disciplinary actions which contributed to aggravating Plaintiff's purported mitral valve prolapse, resulting in her taking time off from October to December 1999.  (Id. ¶ 16).

- In March 2002, Plaintiff was allegedly reprimanded by Troy for recording patient interviews, while a non African-American interviewer received only a verbal counseling.  (Id. ¶ 18).

- In addition, Plaintiff alleges that Plaintiff and other African-Americans were discriminated against as a result of Defendants' actions in closing units that were headed by an African-American at the VA's Lyons campus and transferring them to the East Orange, New Jersey campus.  (Id. ¶ 32).  Plaintiff also maintains that she and other African-Americans were disciplined more harshly than similarly situated non African-American employees.  (Id. ¶ 33).

In June 2000, Plaintiff made her initial contact with an Equal Employment Opportunity ("EEO") counselor regarding various allegations.  On August 4, 2000, Plaintiff filed a formal EEO complaint which stemmed from the June 2000 counselor discussions and was particular to

incidents that occurred in May and June 2000. On August 3, 2001, Plaintiff filed a second formal EEO complaint regarding approximately thirty incidents beginning in September 1996 and including incidents through July 2001. (O'Malley Decl. Ex. A). By written decision dated February 19, 2002, the VA's Office of Resolution Management ("ORM") advised Plaintiff of partial acceptance and partial dismissal of her August 3 EEO complaint. (O'Malley Decl. Ex. C). A majority of the claims were dismissed for failure to meet procedural requirements, including, failure to state a claim under 29 C.F.R. 1614.07(a)(1), failure to bring a matter to the attention of an EEO counselor under 29 C.F.R. 1614.107(a)(2), and untimeliness under 29 C.F.R. 1614.107(a)(2). The procedural dismissal of the untimely claims were upheld in Final Agency Decisions dated November 29, 2004 and February 8, 2005. (O'Malley Decl. Exs. E, F).

Plaintiff filed the instant action on February 25, 2005. Plaintiff's Complaint asserts claims for discrimination, hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, pertaining to employees of the United States government, codified at 42 U.S.C. §§ 2000e to 2000e-17. Plaintiff also alleges discrimination in violation of the Rehabilitation Act, and retaliation for engaging in protected speech, in violation of 42 U.S.C. § 1983.

Defendants presently move to dismiss segments of Plaintiff's Complaint, framing the instant motion as one to dismiss under Rule 12(b)(6), or, in the alternative, as one for summary judgment under Rule 56.

## LEGAL STANDARDS

In deciding a motion to dismiss under Federal Rule 12(b)(6), "[c]ourts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences

in favor of the non-moving party." In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). A court's inquiry into the legal sufficiency of a plaintiff's pleadings under this standard is necessarily very limited, as the issue to be decided "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support [his] claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A complaint may be dismissed for failure to state a claim "where it appears beyond any doubt that no relief could be granted under any set of facts which could be proved consistent with the allegations." Doe v. Div. of Youth & Family Servs., 148 F. Supp. 2d 462, 481 (D.N.J. 2001) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). In reviewing the sufficiency of a complaint, the district court plays a limited role. Id. "Generally, when conducting such an inquiry, materials beyond the pleadings should not be considered." Id. (citing In re Burlington, 114 F.3d at 1426). Finally, "[l]egal conclusions made in the guise of factual allegations ... are given no presumption of truthfulness." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

However, if "matters outside the pleadings are presented to ... the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(c). To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001). "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue." Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d

Cir. 1998) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). When considering a motion for summary judgment, all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(e); <u>Anderson</u>, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." <u>Id.</u> at 252. Furthermore, conclusory statements and arguments do not raise triable issues which preclude summary judgment. <u>Ridgewood Bd. of Educ. v. N.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999). Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." <u>Anderson</u>, 477 U.S. at 257 (citation omitted). If the opponent fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 321 (1986).

**DISCUSSION**

**A.     Failure to Exhaust**

Federal employees believing themselves aggrieved by discriminatory personnel actions must first comply with the administrative procedural demands of Title VII before initiating a civil action alleging employment discrimination. <u>Brown v. Gen. Srvs. Admin.</u>, 425 U.S. 820, 832 (1976); <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1020-21 (3d Cir. 1995). Under EEOC regulations,

"[a]ggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). The complaining party "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory ...." 29 C.F.R. § 1614.105. Thereafter, "[u]nless the aggrieved person agrees to a longer counseling period ... the Counselor shall conduct the final interview with the aggrieved person within 30 days of the date the aggrieved person contacted the agency's EEO office to request counseling." 29 C.F.R. § 1614.105(d). Then, "[i]f the matter has not been resolved, the aggrieved person shall be informed in writing by the Counselor, not later than the thirtieth day after contacting the Counselor, of the right to file a discrimination complaint. The notice shall inform the complainant of the right to file a discrimination complaint within 15 days of the receipt of the notice ...." Id. Agencies are required to dismiss an entire complaint "[t]hat fails to comply with the applicable time limits contained in §§ 1614.105, 1614.106 and 1614.204(c) ...." 29 C.F.R. § 1614.107(a)(2). Here, Plaintiff was advised by notice dated February 19, 2002, that EEO complaint No. 4166, put into a formal EEO complaint on August 3, 2001, was partially dismissed because of Plaintiff's failure to timely assert certain claims. (O'Malley Decl. Ex. C).

Defendants argue that Plaintiff is barred from raising certain allegedly discriminatory acts in the current litigation for failure to exhaust administrative remedies. Defendants maintain that specific paragraphs in Plaintiff's instant Complaint, namely, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 24, 25, 26, 32, 33, 37, 40, 41, 42, 43, 47, 48, as well as Count Five of the Complaint, should be dismissed under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief.

7

(Defs.' Br. at 9). They contend that the aforesaid enumerated paragraphs of the instant Complaint must be dismissed because they mirror alleged discriminatory acts previously raised by Plaintiff in her August 3, 2001 EEO complaint, which were held to be untimely.[1]

Plaintiff does not appear to dispute that the above-referenced alleged discriminatory acts were raised in an untimely manner in the August 3, 2001 EEO complaint, and that, as a consequence, the corresponding allegations in the instant Complaint are subject to dismissal for a failure to exhaust. Plaintiff argues, however, that the paragraphs at issue in the instant Complaint should not be dismissed for failure to exhaust administrative remedies as they collectively are a part of a continuing violation which gives rise to a hostile work environment. The continuing violation doctrine "'is an equitable exception to the timely filing requirement' [so that] when a defendant's conduct is part of a continuing practice, [a legal] action is timely so long as the last act evidencing the continuing practice falls within the limitations period." Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)). This theory permits a plaintiff to "pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant." West, 45 F.3d at 754 (citations omitted). In order to invoke the continuing violation theory, a plaintiff must show that: (1) at least one discriminatory act occurred with the time limitations period; and (2) the

---

[1] Although it appears Plaintiff filed several EEO complaints, the Court limits its analysis to those claims referred to as untimely in the ORM's February 19, 2002 decision because these are the only items that Defendants identify as untimely in the instant motion. (Def. Br. at 3-4). The February 19 ORM decision solely addressed Plaintiff's August 3, 2001 EEO Complaint. (O'Malley Cert. Ex. C). Accordingly, the Court's analysis pertaining to the continuing violation theory shall be based solely on the August 3, 2001 EEO complaint.

8

discrimination was not comprised of "isolated, intermittent acts of discrimination." Id. at 754-55. The Third Circuit has enumerated several factors for determining whether a plaintiff has demonstrated a continuing violation. These factors include the subject matter of the incidents, the frequency in which they occur, and their degree of permanence. Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997). Here, the relevant EEO complaint was filed by Plaintiff on August 3, 2001. Therefore, unless the continuing violation theory or some other type of equitable tolling theory applies, any claim by Plaintiff based on an incident of discrimination that occurred prior to June 19, 2001, is time-barred.

Plaintiff contends that at least one of the alleged discriminatory incidents occurred within the limitations period. Plaintiff maintains that she "details a litany of abuses, transgressions and sleights that were directed at her after Mr. Troy's arrival," and "at least one of the allegations falls within the forty-five day filing period." (Pl.'s Br. in Opp. at 9). It is not readily apparent from Plaintiff's responsive brief precisely which of these allegations fall within the applicable limitations period. However, the Court observes that in her Complaint, Plaintiff alleges that she was subjected to a hostile work environment when Troy denied her request for use of annual leave time in August 2001. (Compl. ¶ 24). The February 19 ORM decision identifies that said request was denied on July 16, 2001. (O'Malley Decl. Ex. C at 9). Therefore, the Court will accept Plaintiff's designation as an alleged adverse action occurring within the 45-day filing period.

The Court now turns to the second factor, namely, whether Plaintiff was subjected to a continuous pattern of discrimination. West, 45 F.3d at 755. This Court concludes that a

9

reasonably jury could conclude that Plaintiff has alleged sufficient facts to support the application of the continuing violations doctrine to Plaintiff's hostile environment claim. Here, several of the paragraphs of Plaintiff's Complaint that Defendants seek to dismiss as untimely are clearly of the same subject matter, racial discrimination. (Compl. ¶¶ 13, 14, 15, 20, 21, 32, 33). Furthermore, these alleged acts occurred consistently over several years of her employment. Finally, the alleged harassment, e.g., reassignment to more difficult units, failure to provide an assistant head nurse, and disciplinary actions against Plaintiff, see Compl. ¶¶ 13, 15, 20, was not of such a nature as to "trigger a duty of the plaintiff to assert [her] rights arising from the deprivation." West, 45 F.3d at 756. As such, Plaintiff may proceed on a continuing violation theory. Accordingly, Defendants' motion to dismiss for failure to exhaust is denied.

**B.     The Rehabilitation Act**

In Count Four, Plaintiff asserts a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., based on her purported mitral valve prolapse disability. Plaintiff contends that the condition is brought on by anxiety, which causes her to suffer shortness of breath and heart palpitations. Defendants move to dismiss Count Four for failure to state a claim. The standards for determining a violation of the Rehabilitation Act are the same as those under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Howard v. Potter, 2006 U.S. Dist. LEXIS 29436, *8 n.3 (E.D. Pa. May 15, 2006) (citing McPherson v. Mich. High Sch. Athletics Ass'n, 119 F.3d 453, 459-60 (6th Cir. 1997)). In order to advance a prima facie case of discrimination under the Rehabilitation Act, an employee must demonstrate: "(1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was

nonetheless terminated or otherwise prevented from performing the job." Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996). See also Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 568 (3d Cir. 2002) (same).  In the context of the ADA, a " disability" is

> (A)  a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B)  a record of such an impairment; or
> (C)  being regarded as having such an impairment.

42 U.S.C. § 12102(2); Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 193 (2002).

The Supreme Court has noted that "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." Id. at 198.  However, "[m]erely having an impairment does not make one disabled for purposes of the ADA.  Claimants also need to demonstrate that the impairment limits a major life activity." Id. (citing 42 U.S.C. § 12102(2)(A)).  "'[S]ubstantial' precludes impairments that interfere in only a minor way with the performance of manual tasks." Id. at 197.  With respect to working, "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. 1630.2(j).  In evaluating whether an impairment can be considered a substantial limitation on a major life activity, the court look at: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." Id. at 196 (citing 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii)).  The Federal regulations provide examples of major life activities, including

walking, seeing, and hearing.  45 C.F.R. § 84.3(j)(2)(ii).

In the present case, Plaintiff asserts that she has a disability; namely, mitral valve prolapse.  Plaintiff also specifically identifies the Rehabilitation Act in Count Four of her Complaint, and alleges that she was discriminated against because of the disability.  (Compl. ¶ 59).  Plaintiff's Complaint is sufficient to meet the low threshold required for notice pleading under the Federal Rules.  Under notice pleading, "a plaintiff need not plead facts." Alston v. Parker, 363 F.3d 229, 233 n. 6 (3d Cir. 2004).  Under this standard, "a plaintiff need only make out a claim upon which relief can be granted. If more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules." Id.  Plaintiff's Complaint meets this threshold.  Accordingly, Defendants' motion to dismiss Count Four is denied.

**C.     Hostile Work Environment under Title VII**

In Count Two of the Complaint, Plaintiff alleges a claim for hostile work environment. Section 2000e-2 of Title 42 of the United States Code provides, in pertinent part:

> It shall be an unlawful employment practice for an employer –
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin….

42 U.S.C. § 2000e-2 (a)(1).  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).

12

Where a plaintiff is relying on indirect or circumstantial evidence, Title VII harassment claims are evaluated in accordance with the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and then elaborated in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981).  As described by the Court in Burdine:

> First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving a prima facie case, the burden [of production] shifts to the defendant to articulate some legitimate, non-discriminatory reason for the [adverse employment decision]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that legitimate reasons offered by the defendant were not his true reasons, but were a pretext for discrimination.

Burdine, 450 U.S. at 252-53.

Generally speaking, to advance a prima facie case of hostile work environment under Title VII, a plaintiff must show that "(1) he suffered intentional discrimination because of his [national origin]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001) (citing Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996)).  The harassment "must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" West, 45 F.3d at 753 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)) (internal quotations omitted).  When analyzing whether a work environment is objectively hostile, "courts are not to

13

examine the scenario on an incident-by-incident basis, but instead must consider the totality of the circumstances." Roberts v. Univ of Pennsylvania, No. 00-3377, 2001 WL 1580304, *5 (E.D. Pa. 2001) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1485 (3d Cir. 1990)). Here, Defendants move to dismiss several paragraphs of Plaintiff's Complaint, namely, paragraphs 15, 40, 41 and 43, for failure to state a claim for hostile work environment. However, Defendants' request is clearly inconsistent with this Court's obligation to evaluate the "totality of the circumstances" in ascertaining whether there is a hostile work environment. Therefore, Defendants' motion to dismiss the aforesaid paragraphs is denied.

**D.     Retaliation under Title VII**

In Count Three of her Complaint, Plaintiff alleges that Defendants also retaliated against her in violation of Title VII, for filing prior internal complaints. Title VII's anti-retaliation provisions serve to protect employees who file complaints against their employers from punishment by said employers. In order to set forth a claim for unlawful retaliation under Title VII, a plaintiff must produce evidence that: (1) the plaintiff engaged in activity protected by Title VII; (2) the plaintiff's employer took an adverse employment action against the plaintiff either after or contemporaneous with her protected activity; and (3) a causal connection exists between that adverse employment action and the protected activity. Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 286 (3d Cir. 2001). Here, Defendants maintains that paragraphs 47 and 48 of the instant Complaint should be dismissed for failure to state a claim for retaliation.

Section 704(a) of Title VII prohibits an employer from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in

an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In this matter, paragraph 47 of the instant Complaint alleges retaliation against Plaintiff because Plaintiff "threatened to complain to the Inspector General about inadequate staffing levels in her unit." (Compl. ¶ 47). In paragraph 48, Plaintiff alleges that she complained about staffing issues in her unit. (Id. ¶ 48). However, in order for Plaintiff to have engaged in a protected activity under Title VII, she must demonstrate that her internal complaints concerned discrimination on the basis of race, color, sex, religion, national origin, or some other statutorily enumerated basis. Plaintiff has failed to do so with respect to paragraphs 47 and 48. As such, Plaintiff did not engage in protected activity with respect to the aforementioned complaints pertaining to staffing. Reyes v. McDonald Pontiac GMC Truck, Inc., 997 F. Supp. 614, 619 (D.N.J. 1998) ("[P]laintiff is unable to show that she was engaged in a protected activity, and she can not satisfy the prima facie elements of a retaliatory discharge claim." ). Therefore, Defendants' motion to dismiss paragraphs 47 and 48 of the instant Complaint shall be granted to the extent that Plaintiff's claim for retaliation is based on these paragraphs.

**E.     Patrick Troy**

Plaintiff also names her supervisor, Patrick Troy, as a Defendant in this action. Defendants contend that Plaintiff's Title VII claims against Troy fail because Troy is not a proper party under Title VII. This Court agrees. Section 2000e-16(c) provides that in a civil action based upon discrimination in federal employment, "the head of the department, agency, or unit, as appropriate, shall be the defendant." This section has been construed to provide that the only proper defendants in such actions are "head of the department, agency, or unit." 42 U.S.C. § 2000e-16(c); Soto v. United States Postal Svc., 905 F.2d 537, 539 (1st Cir. 1990), cert. denied,

111 S.Ct. 679 (1991).  See also Rys v. U.S. Postal Svc., 886 F.2d 443, 444 (1st Cir.1989) (Postmaster General "is the only statutorily appropriate defendant"); Pierce v. Runyon, 857 F. Supp. 129, 131 (D. Mass. 1994) (noting, the "only proper defendant in a Title VII action is the head of the agency...."); Montalvo v. U.S. Postal Svc, 887 F. Supp. 63, 66 (E.D.N.Y. 1995) (dismissing claims against the "Postal Service").  Accordingly, the Court dismisses Plaintiff's Title VII claims against Defendant Patrick Troy.[2]

## CONCLUSION

For the reasons set forth above, Defendants' motion [Docket # 8] is granted in part and denied in part as against Plaintiff Rhonda Garrett.

An appropriate order follows.

DATED: September 13, 2006                                                     s/ Jose L. Linares
                                                                              United States District Judge

---

[2] It should further be noted that Plaintiff does not respond to Defendants' arguments regarding Troy, and, as such, these arguments are deemed unopposed.  In the Third Circuit, courts have routinely held the claim at issue to have been abandoned, if not "defended in [the plaintiff's] opposition to defendant's motion."  Evans v. Nine West Group, Inc., No. 00-4850, 2002 WL 550477, at *4 (E.D. Pa. April 15, 2002); see also Damiano v. Sony Music Entm't, Inc., 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment on plaintiff's copyright infringement claim on the basis that the motion was considered unopposed); U.S. v. Rohm & Haas Co., 939 F. Supp. 1157, 1161 (D.N.J. 1996) (granting summary judgment on basis that plaintiff's argument was unopposed, and thus no genuine issue of material fact was created).